ARTHUR VOGEL, APPELLEE, V. RUTH ANN BARTELS ET AL.,
APPELLEES, AND OTOE COUNTY, NEBRASKA, APPELLANT.

510 N.W.2d 529

Filed August 10, 1993.   No. A-91-1245.

Douglas Wilken, Deputy Otoe County Attorney, for appellant.

Richard H. Hoch, of Hoch & Steinheider, for appellee Vogel.

SIEVERS, Chief Judge, and IRWIN and WRIGHT, Judges.

IRWIN, Judge.

## I. INTRODUCTION

This is a suit to quiet title to a tract of river bottom farmland located on the east side of the Missouri River. Appellee Arthur Vogel testified that his father purchased the property in 1928

under a Missouri description. The Vogel family moved onto the property in 1929 or 1930. Vogel and his father cleared the property and subsequently farmed it. Vogel began operating the farm without his father's assistance in "1952 [or] 53." Vogel then purchased the land from his father via a Missouri deed. Vogel or his father has farmed the property since the land was cleared, with the exception of 1983 and 1984, when a tenant farmer farmed the property. Vogel also claims the land by adverse possession.

A procedural note is in order at this juncture. Appellant, Otoe County, Nebraska, timely and properly perfected its appeal to this court. Appellees Jack R. Wicker and Charles D. Hahn also filed a notice of appeal, but have failed to present the court with briefs or appear at oral arguments. Since no briefs were filed, no errors have been assigned or discussed by Wicker and Hahn. Therefore, we affirm the order of the district court as regards these two individuals because this court will consider only those errors assigned and discussed in the brief of one claiming that prejudicial error has occurred. See *State v. Melton*, 239 Neb. 576, 477 N.W.2d 154 (1991).

We are now left with appellant, Otoe County. Otoe County, in its cross-petition, claimed title to "Lots 2, 3, 7, 5, and 6 in the North half of Section 29, in the Southwest Quarter, Township 7, Range 15, Otoe County, Nebraska," by virtue of a sheriff's deed. Otoe County also pled that Vogel's action in adverse possession cannot be maintained against Otoe County due to Neb. Rev. Stat. § 25-202 (Reissue 1989). This point will be discussed below.

In its order, the trial court found in favor of Vogel, quieted title to the property in Vogel, and by implication dismissed the cross-petition of Otoe County.

## II. ASSIGNMENTS OF ERROR

Otoe County assigns three errors, which may be summarized as follows: The first is that the trial court's determination quieting title to the property claimed by Otoe County is error because Vogel cannot maintain an action in adverse possession against a county. The second assigned error is that the trial court was incorrect

in finding that *Winkler vs. Bartels, et al.*, Case Number 35-35 found in the records of the District Court of Otoe County, Nebraska, are [sic] dispositive of this cause of action [because] Otoe County, Nebraska, did not receive notice of the hearing date in the matter of *Winkler vs. Bartels, et al.*, did not appear at the hearing or present evidence in the matter.

## III. ANALYSIS

### 1. DEFICIENT RECORD

The second assigned error fails for the reason that no transcript or bill of exceptions is before us concerning the case entitled "*Winkler vs. Bartels, et al.*" " 'It is incumbent upon the party appealing to present a record which supports the errors assigned; absent such a record, as a general rule, the decision of the lower court is to be affirmed.' " *State v. Back*, 241 Neb. 301, 306, 488 N.W.2d 26, 31 (1992) (quoting *In re Interest of R.R.*, 239 Neb. 250, 475 N.W.2d 518 (1991)).

The record before us sheds no light on whether Otoe County received notice on this collateral case or whether Otoe County appeared at the hearing. Therefore, this assigned error is without merit.

### 2. QUIETING TITLE

Otoe County next claims the lower court erred in quieting title in favor of Vogel. In analyzing this assertion, we must determine if Vogel carried his burden of proof regarding a quiet title action based on adverse possession and whether appellant, Otoe County, established that it has title to the property it claims. A person claiming title through adverse possession may maintain an action to quiet title. *Mack v. Luebben*, 215 Neb. 832, 341 N.W.2d 335 (1983). See Neb. Rev. Stat. § 25-21,112 (Reissue 1989). An action to quiet title is a suit in equity, which is tried to the court without a jury. See Neb. Rev. Stat. § 25-21,120 (Reissue 1989). An action to quiet title is an action in equity and is reviewed de novo by the appellate court. *Wahrman v. Wahrman*, 243 Neb. 673, 502 N.W.2d 95 (1993). In an action to quiet title, the plaintiff has the burden of proof and must recover upon the strength of his title. *Jones v. Schmidt*,

170 Neb. 351, 102 N.W.2d 640 (1960).

Vogel's evidence consisted of testimony from himself, Ronald A. Hazard, Alma Winkler, and Ernest Nennemann and of exhibits.

Vogel's testimony consisted of his recounting the history of the land within his family, as mentioned above. Additionally, Vogel testified that he had paid taxes on the property to Atchison County, Missouri, and had set aside this land in a federal crop program.

Vogel had the property surveyed by Hazard, the Otoe County land surveyor, to obtain a legal description under the Nebraska chain of title for the property he occupied. Hazard testified that he went to the property, observed what was being farmed by Vogel, and provided a legal description for that property.

Vogel's testimony was supported by the testimony of Winkler, an 83-year-old neighbor who moved to the property adjacent to Vogel's in 1928. She had observed the Vogels clear the land and testified that Vogel and his father have farmed it.

Nennemann testified that he has been acquainted with the Vogel property since 1950 and that he bought a farm in the vicinity of Vogel's farm in 1955. Nennemann did aerial spraying in the area beginning in 1950, and Vogel had hired Nennemann to spray his land. Also, Nennemann was on the local levee board and was acquainted with Vogel and the other area landowners.

The irregular tract of farmland which Vogel claims contains several lots which Otoe County claims ownership of by virtue of a sheriff's deed. The lots represent only a portion of the farmland claimed by Vogel.

The only evidence offered by Otoe County was exhibits 10 and 12. No testimony was offered. Exhibit 10 is a certified copy of a 1974 sheriff's deed in which Otoe County is shown as grantee to "Lots Two (2), Three (3), Five (5), Six (6) and Seven (7), in the North Half (N 1/2) of the Southwest Quarter (SW 1/4) of Section Twenty-Nine (29), Township Seven (7), Range Fifteen (15), Otoe County, Nebraska."

Exhibit 12 is a certified copy of the filings in the office of the register of deeds, which filings relate to Section 29 in the

Nebraska description and include the sheriff's deed. Otoe County presented no plat, field notes, or other evidence which would tell a person where this real estate is located or what its dimensions are.

The testimony of the county land surveyor established the legal description of the property occupied by Vogel. This legal description was contained in exhibit 1 and was the source of the description of the property in Vogel's amended petition. A claim of title to land by adverse possession must be proved by actual, open, exclusive, and continuous possession under a claim of ownership for the statutory period of 10 years. *Vrana v. Stuart*, 169 Neb. 430, 99 N.W.2d 770 (1959). In determining the rights of an adverse owner, the entry and possession of his tenant, expressly authorized to act, is the entry and possession of the owner. *Weiss v. Meyer*, 208 Neb. 429, 303 N.W.2d 765 (1981). The sufficiency of the possession in an adverse possession case depends upon the character of the land and the use that may reasonably be made of it. *Young v. Lacy*, 221 Neb. 511, 378 N.W.2d 192 (1985). Vogel satisfied the above requirements to prove adverse possession. After Vogel met his burden of proof, the burden of proof shifted to Otoe County to disprove that possession. See *Shine v. State*, 458 N.W.2d 864 (Iowa App. 1990). It was also necessary for Otoe County to prove its title to these lots if it hoped to prevail on its cross-petition.

### 3. OTOE COUNTY TITLE

This quiet title appeal is factually unique because it involves a county. The law seems clear, as correctly asserted by appellant, that no title can be acquired against a state by adverse possession. See, *State v. Cheyenne County*, 123 Neb. 1, 241 N.W. 747 (1932); *Topping v. Cohn*, 71 Neb. 559, 99 N.W. 372 (1904). It is equally well established that a county is not a municipal corporation and that a county acts as an agent of the state. *Seward County Board of Commissioners v. City of Seward*, 196 Neb. 266, 242 N.W.2d 849 (1976). Since the county is an agent of the state and since a party cannot adversely possess property of the state, if Otoe County possesses title to the property it claims, the property cannot be adversely

possessed by Vogel. However, if Otoe County does not hold title to the claimed property, Vogel would possess title to the property by adverse possession.

The irregular tract of property claimed by Vogel contains the lots that Otoe County claims title to. These rural lots are subject to the provisions of Neb. Rev. Stat. § 23-304 et seq. (Reissue 1991) regarding irregular tracts of land.

Section 23-307 provides that if certain requirements are met, an irregular tract or lot of land, other than a governmental subdivision, may legally be described by number, section, town, and range for revenue purposes, as well as any other purpose. This would include situations where a county would assess taxes on property for the purpose of raising revenue. However, in order to refer to these tracts merely by lot number, section, township, and range, for the purpose of convenient assessment of taxes and other purposes, there must first be compliance with §§ 23-304 through 23-307. See *City of Scottsbluff v. Kennedy*, 141 Neb. 728, 4 N.W.2d 878 (1942).

Section 23-304 states:

> It shall be the duty of the county board of each organized county in the State of Nebraska to cause to be surveyed, by a competent surveyor, all irregular subdivided tracts or lots of land, other than regular government subdivisions, and cause the same to be platted on a scale of not less than ten inches to the mile; *Provided, however,* where any county has in its possession the correct field notes of any such tract or lot of land, a new survey shall not be necessary, but such tracts may be mapped from such field notes.

Section 23-305 provides:

> The board shall cause duplicate maps to be made, on which said tracts or lots of land shall be accurately described by lines and numbered from one up to the highest number of such tracts in each section, which numbers together with the number of the section, town and range, shall be distinctly marked. One of said maps shall be conspicuously hung in the office of the county clerk and the other in the office of the county treasurer.

There are also filing requirements regarding these irregular

tracts or lots. Section 23-306 requires:

> The board shall also cause to be entered in duplicate, in suitable books to be provided for that purpose, the field notes of all such tracts of land within their respective counties, wherein shall be described each tract according to survey, and each tract shall be therein numbered to correspond with its number on the maps. One of such books of field notes shall be filed in the office of the county clerk, and the other in the office of the county treasurer.

Otoe County claims that it holds title to "lots 2, 3, 7, 5, and 6 in the North half of Section 29, in the Southwest Quarter, Township 7, Range 15, Otoe County, Nebraska," by virtue of a sheriff's deed. This situation is similar to that in *City of Scottsbluff v. Kennedy, supra.* In that case, the record showed that

> the register of deeds has in his office an Irregular Tracts Book Record which was compiled by the county surveyor by authorization of the county commissioners. In this record is a plat showing tax lot 17 and a description of it as described in the government survey, less tax lot 17 B which is that part used as a street and is described therein by metes and bounds.

*Id.* at 733, 4 N.W.2d at 881. The court in *City of Scottsbluff* went on to state, "We think this meets all requirements for describing irregular tracts . . . ." *Id.*

In the case before us, Otoe County made no showing on the record that maps and books of field notes exist, as required by the statutes pertaining to irregular tracts of land. Otoe County did not meet its burden of proof that it held title to the property it claimed in its cross-petition. Otoe County made no showing of the location or size of the lots it claimed. To prove title regarding lots numbered for taxation purposes because they are irregular, an owner must present evidence of the survey maps and books of field notes required by statute.

The fact that there is a disagreement as to whether the property discussed herein is in Nebraska or Missouri is of no consequence in the instant case. See *Nennemann v. Rebuck*, 242 Neb. 604, 496 N.W.2d 467 (1993).

## IV. CONCLUSION

The district court's order is affirmed, since Vogel proved that he is and has adversely possessed the property for more than 10 years.

AFFIRMED.